21-04201MB

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

Your affiant, Homeland Security Investigations (HSI) Special Agent (SA) Devin Taylor, being duly sworn, does depose and state the following:

## PURPOSE OF AFFIDAVIT

1. This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination and extraction of electronically stored information from electronic device associated to Rosa Maria COLON which is currently in law enforcement possession. The electronic device (cellular telephone) to be searched is a black *Samsung* (**TD**) which is further described in Attachment A.

2. There is probable cause to believe that a search of the **TD** will lead to evidence of human smuggling violations under 8 U.S.C. § 1324 as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. The facts that establish the probable cause necessary for issuance of the Order are personally known to me, are contained in official government or business records I have reviewed; or have been told to me directly by other members of the investigative team, which includes federal, state, or local law enforcement officers with whom I have worked on this investigation. As this affidavit is submitted for a limited purpose, it does not contain all aspects of this investigation, but only sufficient information to establish probable cause in support of the issuance of an Order for the examination of the **TD**.

## SUSPECTED VIOLATIONS

- Title 8 U.S.C. § 1324(a)(1)(A)(i) (Bringing in alien(s) at an Improper Time or Place)
- Title 8 U.S.C. § 1324(a)(1)(A)(ii) (Transporting an Illegal Alien in Furtherance of the aliens illegal presence in the United States)

- Title 8 U.S.C. § 1324(a)(1)(A)(iii) (Concealing, Harboring, or Shielding Illegal Aliens)
- Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy to Commit Alien Smuggling)

## TRAINING AND EXPERIENCE

1. I have been employed as a Special Agent with Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) since September 2017. I am currently assigned to the Nogales, Arizona office as a member of the Contraband Smuggling Group. I am a graduate of the HSI Special Agent Training (SAT) Program located at the Federal Law Enforcement Training Center in Glynco, Georgia. While attending HSISAT, I received instruction on human smuggling and trafficking crimes under Title 8 and Title 18 of the United States Code, and on the operations of human smuggling organizations (HSOs) [also known as alien smuggling organizations].

2. I have 13 years of service as a federal law enforcement agent. Prior to working for HSI, I was employed as a Special Agent with the United States Secret Service (USSS) and as a U.S. Border Patrol (BP) Agent for a combined ten years. As a BP agent working line-watch, checkpoint, and highway interdiction operations, I witnessed firsthand, for several years, techniques used by HSOs to smuggle, transport, and harbor illegal aliens. Later, I worked as a BP Intelligence Agent. In that capacity, I conducted detailed analysis of human smuggling events which occurred in the Nogales area, handled and debriefed confidential sources reporting on HSOs, conducted targeted surveillance on HSO members, and served as a liaison with other law enforcement agencies encountering HSOs. I used this information to produce intelligence products that assisted BP management and colleagues in further targeting HSOs.

3. I possess a Bachelor of Science degree from the University of Arizona in Public Administration and a Master of Science degree from Michigan State University in Intelligence and Analysis. I also possess a graduate level certificate in Homeland Security.

4. During my career in federal law enforcement I have participated in or led numerous human smuggling investigations. The investigations have ranged from incident based reactive investigations to long term proactive conspiracy investigations involving multiple jurisdictions and foreign governments. During these investigations I have been involved in coordinated physical and electronic surveillance operations, oversaw undercover operations, conducted arrests and seizures, and conducted interrogations of violators and interviews of witnesses and sources. Through collective experience as a federal law enforcement agent I have become familiar with how HSOs operate, specifically, how they smuggle, harbor, and transport illegal aliens, as well as how they collect and launder illicit proceeds.

5. I am an "investigative or law enforcement officer of the U.S." within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As an HSI agent I retain applied authority to investigate violations of the Immigration and Nationality Act (INA) codified under Title 8.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The electronic device (**TD**) to be searched is:
    a. A black *Samsung Galaxy S20 Plus* cellular telephone, <u>520-330-6410</u>, with IMEI#351835111201442, activated through Verizon on 9/30/2020, and subscribed to Rosa Colon, 172 E. Forrest Feezor Street, Vail, Arizona 85641;

7. The **TD** was seized from Rosa COLON (hereafter COLON) on Sunday November 15, 2020 subsequent to her encounter and arrest by U.S.B.P. agents in Sonoita, Arizona. COLON was the driver and principal suspect in a human smuggling event that day after two illegal aliens were found in her vehicle. The **TD** is currently secured in the HSI Nogales office located in Nogales, Arizona.

8. The applied-for warrant would authorize the forensic examination of the **TD** for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

### I. Background of Investigation

9. HSI Nogales, HSI Phoenix, and HSI Attaché Mexico City, in collaboration with the U.S. Attorney's Office in Tucson, Arizona, are jointly investigating a transnational human smuggling network which smuggles illegal aliens, primarily from Mexico and Central America, into Arizona. Overall, the HSO consists of a robust and interconnected transportation network that includes cross-border foot guides, load drivers/couriers, stash house operators and facilitators, scouts, interstate commercial vehicle load drivers/couriers, and collectors/launderers of illicit proceeds. Using this network, HSO leaders are capable of transporting smuggled illegal aliens from Mexico to Tucson and Phoenix, Arizona collection points and later to locations all over the U.S. Since September 2019, HSI has attributed numerous human smuggling events occurring in Arizona to the HSO as well as the apprehension of approximately 330 illegal aliens.

### II. June 13, 2020 Human Smuggling Event Involving COLON

10. On Saturday June 13, 2020 at approximately 11:20am, COLON, a 66-year-old U.S. citizen, was encountered as the driver of a 2009 tan Volkswagen Passat (AZ/AHF8744, Registered Owner: Rosa COLON, PO BOX 15064, Tucson, Arizona) at the Interstate 19 checkpoint in Amado, Arizona. COLON had a small white dog on her lap that was barking loudly while the U.S.B.P. agent in the primary inspection lane attempted an immigration inspection. A U.S.B.P. service canine alerted to COLON's vehicle which was referred to secondary inspection. During an immigration inspection of the passengers in the secondary inspection area, U.S.B.P. agents determined that COLON was a U.S. citizen but that her two (2) passengers were illegal aliens [Vanessa

EUGENIO-Marcelo (DOB: 11/24/2001) and Mitze BERNAL-Sanchez (DOB: 03/26/1998). COLON was arrested for violations of human smuggling. COLON was read *Miranda* but declined to provide a statement to agents at that time. Due to detention restrictions in place during the COVID-19 pandemic, COLON was deferred for prosecution and the illegal aliens were processed administratively and returned to Mexico. COLON's cellular phone was not seized.

### III. November 15, 2020 Human Smuggling Event Involving COLON

11. On Sunday November 15, 2020, at approximately 2:10pm, U.S.B.P. agents encountered a black Chevrolet Suburban (AZ/OVI1 – Handicapped Veteran plate, Registered Owner: Ovidio COLON, 172 E. Forrest Feezor Street, Vail, Arizona 85641) at the Highway 83 checkpoint in Sonoita, Arizona. Two U.S.B.P. agents conducted an immigration inspection of the occupants inside the Chevrolet Suburban. A license plate on the front bumper displayed a Vietnam War service ribbon and the rear window had several decals including one that said, "Vietnam Veteran," and another that said, "U.S. Army Retired." COLON was encountered as the driver. The U.S.B.P. agents determined that a front seat passenger and a rear seat passenger were citizens and nationals of Mexico without the proper documents to enter, transit, or remain in the U.S. COLON was subsequently detained for suspicion of human smuggling and stated to the U.S.B.P. agents, "okay, I want to tell you the truth, I was just giving them a ride." COLON and the illegal aliens were transported to the Nogales Border Patrol station for processing. Post *Miranda*, COLON made a statement to agents consisting of inconsistencies in her explanation of events and several lies. COLON initially stated that she picked up the two men (COLON stated she did not know they were illegal aliens) in Patagonia, Arizona but later admitted to picking up the men at the Marshal's / Ross parking lot on Mariposa Road in Nogales, Arizona. COLON stated she was only giving the men a ride to Tucson, Arizona because they didn't have a car. COLON stated she did not profit from giving the men a ride and further stated she had only called her sister prior to her encounter

at the Highway 83 checkpoint (implying she talked to no one else regarding smuggling). COLON also discussed her previous arrest for human smuggling about five months prior at the Interstate 19 checkpoint. COLON stated that the two illegal aliens found in her vehicle then were friends of her sister. COLON stated that she owns a trailer in Sahuarita, Arizona and that is the reason she drives south on Interstate 19 to Nogales and then drives north on Highways 82/83; because she likes the route better. COLON eventually stopped answering questions and requested an attorney be present.

12. During both of her encounters by U.S.B.P. agents (June and November), COLON appeared to have used props to distract agents and facilitate her smuggling attempts. At the Interstate 19 checkpoint, COLON had a barking dog in her lap which, according to the agent on the primary lane, made it difficult to ask COLON questions. At the Highway 83 checkpoint, COLON had several veteran related decals. Many agents are themselves service veterans and think of other veterans as honorable (non-smugglers). Finally, during both smuggling attempts, the illegal aliens all wore protective masks according to the reports made by the BPAs (however, COLON did not). Agents believe this could have been a way to further conceal the faces of the illegal aliens.

### IV. Further Research on COLON and Suspected Criminal Associates

13. **TD** was seized from COLON at the Highway 83 checkpoint on November 15, 2020, by arresting U.S.B.P. agents. During her detention, **TD** rang repeatedly. U.S.B.P. agents were able to photograph **TD**s screen during two incoming calls. A phone contact saved as "Vanessa Salomon" 520-443-1441, called **TD** at 3:00pm (via WhatsApp) and 3:17pm (via standard call). SA Taylor and Criminal Research Analyst (CrA) Ashlee Hindo subpoenaed call detail records for 520-443-1441 "Vanessa Salomon" and found the phone number that 520-443-1441 "Vanessa Salomon" had called at 3:00pm and 3:17pm on November 15, 2020 was 520-330-6410. SA Taylor and CrA Hindo subpoenaed call detail records for 520-330-6410 and found it subscribed to COLON confirming it as **TD**.

14. "Vanessa Salomon was identified as Laura Vanessa SALOMON, a U.S. citizen from Tucson, Arizona. SALOMON regularly crosses the international border in Nogales and Naco, Arizona. SALOMON has an investigative alert for being associated to human, drug, and currency smuggling and is the subject of a criminal investigation.

15. Analysis of call detail records for TD reveal it was in communication with Ashley SALOMON, associated to 520-225-7148, approximately 14 times from October 29, 2020 to November 15, 2020. In January 2018, A. SALOMON was arrested by HSI agents at a residence in Tucson, Arizona which contained several firearms and drugs.

16. Agents believe, based on the totality of circumstances, that **TD** contains evidence of COLON's involvement in a human smuggling conspiracy.

## V. Cellular Telephone Use by Human Smugglers

17. In my training and experience, human smugglers, to include couriers, frequently utilize cellular telephones during the course of transporting illegal aliens in order to remain in contact with smuggling coordinators who notify the driver where to pick up and drop off illegal aliens. Co-conspirators can also notify the driver of law enforcement presence in the area and give instructions on how to avoid detection during smuggling attempts. Furthermore, human smugglers are often asked to take pictures and record videos of the illegal aliens they pick up and transport, which are sent to HSO coordinators in Mexico as proof they were in fact located and transported to the next destination.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices such as the **TD** can store information for long periods of time. Similarly, things that have been viewed on the electronic device via the Internet and applications are also typically

stored for long periods of time. This information can sometimes be recovered with forensic tools.

19. *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in this affidavit, but also forensic evidence that establishes how the **TD** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that the following forensic electronic evidence might be found on the **TD**:

   a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b) Forensic evidence on an electronic device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore,

8

      contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e)    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TD** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the electronic device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine the **TD** which is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SUMMARY

22. Based on the foregoing factors, I believe that the **TD** was used to facilitate and further the smuggling of illegal aliens through the U.S. in violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii) and other federal statutes. Obtaining the electronically stored information from **TD** is anticipated to yield additional evidence of a human smuggling conspiracy between COLON and members of the HSO as well as other co-conspirators unknown to investigators

23. Considering the ongoing investigation referred to in this affidavit, and the need to avoid any one of the adverse results enumerated in 18 U.S.C. § 2705(a)(2), it is further requested that this affidavit be filed *under seal* and that notice of the order be delayed for a period of 180 days.

I swear, under penalty of perjury, that the foregoing is true and correct.

_____
DEVIN M TAYLOR
Digitally signed by DEVIN M TAYLOR
Date: 2021.01.11 10:15:29 -07'0

Devin Taylor
Special Agent
Homeland Security Investigations

Subscribed and sworn to telephonically this  11th  day of January 2021.

_____
The Honorable Maria S. Aguilera
United States Magistrate Judge

ATTACHMENT A

PREMISES TO BE SEARCHED

Target Device, which is described as a black *Samsung Galaxy S20 Plus* cellular telephone, 520-330-6410, with IMEI#351835111201442, IMSI# 311480563813849, activated through Verizon on 9/30/2020, and subscribed to Rosa Colon, 172 E. Forrest Feezor Street, Vail, Arizona 85641. The Target Device is currently being held at the HSI Nogales office and is shown below:

 

# ATTACHMENT B
# ITEMS TO BE SEIZED

The particular items to be seized from the device to be searched are as follows:

1. All records on the electronic device that relate to violations of Title 8 U.S.C. § 1324 (Human Smuggling) including:

    a. Any and all 'WhatsApp' communications on the electronic device

    b. Any and all photographs or videos depicting other co-conspirators;

    c. Any and all SMS/MMS messages, voice messages, instant messages, other third-party messaging application data, telephone numbers and notes, appointment books and/or calendars and notes, to-do lists, bookmarks, electronic mail, social media accounts, financial account information, contact lists, address lists, geo-location data, or any other data concealed within the electronic device to be searched that may relate to the suspected violations of federal law listed above;

    d. Any and all records recording the planning, commission, or concealment of the suspected violations of federal law listed above; and

    e. Any and all micro SD, memory cards or hard drives attached to or inside the electronic devices to be searched which are used as extended memory storage devices.

2. Evidence of user attribution showing who used or owned the electronic device to be searched at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer, smartphone or electronic storage (such as flash memory or other media that can store data) and in any photographic form.